Good afternoon. May it please the Court, I'm James Laughlin and I represent the appellant Andres Castro. With the Court's permission, I'd like to reserve two minutes of my ten minutes of time for rebuttal. The issue in this case is whether the state court unreasonably applied clearly established federal law concerning when a misdemeanor- It's enunciated by the Supreme Court. Which Supreme Court case? Your Honor, it starts back in 1824 with the Perez case, where the Court held that the first use of the words manifest necessity and held that that requirement is necessary to ensure that the power to grant a mistrial is only used with the greatest caution under- I know the generalities. I need a Supreme Court case that shows that this circumstance, a conflict of interest of counsel that arises in the middle of trial, does not justify a mistrial, is not manifest necessity. Your Honor, we've never claimed that that's the reason for the substitution of counsel precludes a finding of a mistrial in this case. What our issue is, is that once it became clear that counsel had to be substituted because of the conflict, the trial court could not declare a mistrial. I know that. You need to show if it's manifest necessity, the trial court can declare a mistrial and can have a new trial with a new jury. No double jeopardy if there's manifest necessity. This string of Supreme Court decisions that you began listing establishes that. Yes. I'm asking you about the next step. Is there any Supreme Court decision that shows that circumstances such as this are not manifest necessity? I believe all of them, Your Honor. And if I may explain, and maybe I'm not understanding the Court's question, and maybe this will help. Look, let me make the question clear to make sure you understand it. We can't grant a writ based on new law that we come up with. We can't even grant a writ based on law that's established, but only in the circuit courts. We can only grant a writ if the State court, the highest State court, acts contrary to or unreasonably applies constitutional law as enunciated by the Supreme Court. Exactly. And so I'm asking you, which Supreme Court decision should I look at? Because I couldn't find one that suggested that there was not manifest necessity in circumstances like these. Well, Your Honor, first of all, I disagree if the Court is implying that in order to get a writ of habeas corpus, a Petitioner has to find a Supreme Court that's exactly on all four squares facts exactly the same as his, because that's never going to happen. Let's go on a good-enough-for-government-work kind of standard instead of an exactly on all fours standard. What do you got? I got the Perez case, Arizona v. Washington. All of these cases say manifest necessity. And Arizona v. Washington describes that as a high degree of necessity and says that the Court cannot apply a mechanical test to find out what manifest necessity is. And what those do is that it's a contention, if I can be a little, make it more specific, that it wasn't a manifest necessity because they could have kept the jury, the same jury, instead of impounding a new one. Is that basically where we are? Somewhat, Your Honor, except what my contention is, we don't know that. The issue, what I think the issue is, that manifest necessity has to be based on real facts. It's very possible that if the trial court had sat, asked the jurors, if we ask you to come back in four months, are you going to have a problem with that, they may have said we can't do that, and there would have been a factual basis to say, I've asked the jury, we can't do this, there's manifest necessity for mistrial. What a court can't do is assume the jury is going to suffer a hardship. Well, that might be true under some circumstances, and I was somewhat enticed with that argument for a while. But it does seem to me that holding a jury in abeyance for four months would be incredibly unusual. Is that not right? It would be, Your Honor. But we ask juries to do unusual things all the time. Right now, we've got the Robert Blake trial, and we've got the Michael Jackson trial, where the courts are taking every effort to shield jurors from cases where there's a high degree of media scrutiny. Just because, and I'm sure that the jurors in those cases are undergoing extreme hardship. Those are jurors who are actually hearing cases. Here, what the suggestion, and I've just never seen this happen, is that you put the jury into abeyance, tell them to go back to their lives for four months, and come back four months later with attendant difficulties, like what were they doing for the four months, and how were they going to stay away from information, and so on. Well, Your Honor, I don't think it's that difficult. First of all, it does happen all the time. Four months is an unusual length of time. And as I also point out in the briefs, I think that the Court also relied on assumptions to the fact that a four-month continuum would be necessary, because he didn't the Court didn't try to find other counsel that could be ready sooner. But with regard to the jury, even in this case, the jury was picked and then told to come back 10 days later, because they weren't ready to start the trial. I understand, but this is not 10 days, it's four months. I understand that, Your Honor. I think that – and again, I believe that it's possible that if the jurors had been asked the questions like the judge should have asked the questions, the jurors, at least some of them, would have said, we can't do this. And then there would have been a factual basis for a finding of manifest necessity. How do they even know they can't do it? I mean, four months. Gosh, you're going to tell them not to read the paper for four months? Are you going to tell them, be sure you don't get sick four months from now? Be sure your daughter doesn't call you up and say she's having a baby four months from now? People don't know the future. That's a long future. Your Honor, I would argue that in some ways it might make the jury service less burdensome. It was – this trial was estimated to last six weeks. I believe that some jurors might consider it a benefit to know in the future, I can plan my life around this six weeks that I have to spend on jury duty, as opposed to having the next six weeks of their lives immediately turned into turmoil because they have to serve on this jury. They have to predict their life for six months now, not four months. Right. But see, Your Honor, see, this is a problem we're getting into. We're assuming. And once you start making assumptions, you can assume, well, maybe it would have been a good thing if they had come back. You know, it's a little higher burden. You're arguing about legal error right now, but what you really have to show is objective that the California Court of Appeals' decision was objectively unreasonable. Yes. So what you really have to say is that it's objectively unreasonable for the California Court of Appeals, based on its experience and judgment and knowledge about the jury system, to have generalized certain assumptions about the harm and the reasons why this was a manifest necessity or a legal necessity, in their words, at the time. So you're not really even meeting your argument. I strongly disagree with that, Your Honor. I think that the You're not making it. You're not articulating why it's objectively unreasonable. It's objectively unreasonable because every case from Perez on down, and the Supreme Court's decided about manifest necessity, the term itself, manifest necessity, suggests, mandates that it's something that's really necessary, that we've pursued all the alternatives and we're only going to grant them this trial once the jury's been sworn, if it's truly necessary. And what that says is, if you want to grant a mistrial because of juror hardships, ask the jurors. If there's hardships, you grant a mistrial. You don't assume. And that's objective. That's a new rule, that we have to ask the jurors. That's a new rule. No, I don't believe so, Your Honor. Can you go to a case that says you have to ask the jurors? Your Honor, unfortunately, I think the Court's putting me in a position where I have to prove a negative. No, no. You're saying the rule is you have to ask the jurors. You can't rely on generalized assumptions about the jury system. That's the rule you're proposing. Can you say one case that's ever said that? No, Your Honor, because I believe that the rules that have been established by the Supreme Court, clearly established by the Supreme Court, when they define and apply the manifest necessity rule, is that you have to make sure that the finding is based on real facts. Manifest means it's you want me to go on dictionary definitions. You've conceded, I think, that you have no Supreme Court decision that says that you have to hold the jury for four months or for some extended period of time rather than let them go and pound a new jury or else it's double jeopardy. You've conceded you have no case that says that there isn't manifest necessity unless the judge has first examined the jurors to determine whether they could be available after such a long time. You've basically conceded that all away, and what you're saying is we should look at a dictionary and look up the words. Manifest means it's showing you can ‑‑ it's perceptible right now. Necessity means it's really, really necessary, not just desirable. Have I got your argument right? I don't believe so, Your Honor. First of all, I think ‑‑ If there's any more to it, tell me, because that's the way it looks to me. I think that the problem that I'm having with, I believe, the Court's position is that ‑‑ I haven't taken a position. Okay. What's suggested by the Court's question is that there is no clearly established law saying you can't rely on assumptions because the clearly established law makes it clear you can't rely on assumptions. What about the Williams case in our court? The Williams case, I think, can be disregarded because while it uses the words probability of juror hardship, I mean, it's a very short opinion. It doesn't say whether or not there was an actual inquiry into whether there was juror hardship. Well, it seems pretty obvious that there wasn't. I don't read it that way. I also don't ‑‑ I think it's not obvious that the defendant or the appellant in that case raised the issue. And, of course, a case where the argument was never raised and addressed by the Court can't stand for a proposition that was never argued or ‑‑ Which issue? From the opinion, which, again, is very short, it doesn't look like the defendant in that case ever argued the Court can't rely on assumptions and must talk to the jurors, which is the position we're talking about in this case. So I don't think that that case can stand as a court finding that saying that this Court has already ruled that it is proper to rely on assumptions in deciding whether there's going to be juror hardships. I think a case that is from this Court that's more appropriate to look at is the bonus case from last year. In that case, the Court ‑‑ it wasn't a habeas case, but the Court looked at what the trial court did, and in that case, the trial court did talk to the jurors, although it wasn't on the record, and the Court said that's not good enough. If the trial court is going to declare a mistrial over defense objections, it's the court's job to make a record. And in that case, it said you've got to talk to the jurors, and you've got to talk to them on the record, because that's what this Court's going to look at. And that's the problem I'm ‑‑ But in that case, the only premise for the mistrial, as I recall, was the juror's own hardship. Their alleged hardship, their claims of hardship. I understand that. But here, it's the withdrawal of counsel, and the conflict, which existed, and there And this is really what's the remedy for what's already a manifest necessity in the sense that something's got to be done about the conflict of counsel, right? I disagree with that, Your Honor. The conflict of counsel gave rise to the need for some kind of continuance. And the question is whether it's going to be a couple weeks, a couple months, four months. That's an issue. But then the continuance gives rise to, well, what do we do with the jury? And it's the will this continuance be ‑‑ What I'm saying is the difference between that and Bowness is that in Bowness there was nothing other than this supposed hardship of the jury. But in the end, you end up in the same place, Your Honor. It's all about the hardship of the jury. In this case, the issue is, you know, this issue came up, there's a conflict, we have to replace attorneys, it's going to require some kind of continuance. Can we keep this jury or do we have to declare a mistrial? And the issue is, can we send them away and bring them back or will that be too much of a hardship? That's all that the Court of Appeals relied on, although they, I think, improperly and unreasonably relied on assumptions about the general burdens of coming back in four months. But in the end, you're in the same place as Bowness. It's all about jury hardship. I don't understand why you're talking about Bowness. For one thing, even if the California courts had made a decision that was contrary to Bowness, it wouldn't matter. We couldn't grant the writ because of the way the statute is written. It has to be Supreme Court. For another, Bowness is nothing like this. In Bowness, it was, I think, a four-day trial, and on the second day of trial, the judge says, I just found out that two or three juries aren't going to be paid by their employers for the time they spend on jury service. So it's essentially negligible necessity, non-necessity as opposed to manifest necessity. And what the discussion of inquiry is about is maybe if the judge had asked some questions, there could have been a record that would show that it was more necessary than it looks. So I don't get it. It seems like the case doesn't help you, and it wouldn't matter if it did. I disagree with that, Your Honor. I think this Court's case law says that even under the AEDPA, this Court's decisions interpreting what's clear, what other, what is clearly established Federal law is useful in the Court in considering a habeas case. So I do think that if it is helpful, it can be considered by the Court in considering this habeas case. And I do think it's helpful. I don't, I never claim, the briefs never state that this case is exactly the same as Bowness. But the big picture, which in Judge Kaczynski's opinion he focuses on, is it's really important, once the jury is sworn, that a trial court really take whatever steps are necessary to make sure that there's a factual basis for the court. Well, there, the judge, he didn't even know that they weren't going to be paid. He took it from the bailiff or some court employee. He never even asked the jurors. I think that was unclear. That was part of the problem with the undeveloped record, that it was unclear as to whether he heard it himself or heard it through a third party.  I mean, do you have something new to add? Your Honor, I'm just answering the Court's questions. If it has no more, then I'll let it sit down. Thank you. Thank you. May it please the Court. Sharon Rhodes, deputy California attorney general for the Warden, George Galanza. The California State district court of appeals reasonably found that manifest necessity was necessary. I don't know if any of us actually have anything for you. I mean, everything is pretty much set forth in our briefs. I think the problem is that there's a very high hurdle with the ADPA, and so I don't really have any questions for you. Yeah, that is exactly the Warden's position, is that based on these numerous circuit courts, there's no Supreme Court authority. You have 19 minutes to talk us out of doing what it looks like we're going to do in your favor. You can take it and see if you can lose it, but right now it's looking good for you. Thank you. I can't guarantee that. We haven't deliberated yet. Thank you, counsel.
judges: Kleinfeld, Wardlaw,berzon